**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TAIDOC TECHNOLOGY CORPORATION** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **DIAGNOSTIC DEVICES, INC.,** | : | **NO. 12-2457** |
| **OK BIOTECH CO. LTD., PRODIGY** | : | |
| **DIABETES CARE, LLC and JOHN** | : | |
| **DOES 1-10** | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                                                               **August 23, 2012**

      The defendants, Diagnostic Devices, Inc. ("DDI"), OK Biotech Co. Ltd. ("OK Biotech") and Prodigy Diabetes Care, LLC ("Prodigy"), have moved to transfer this patent infringement action to the Western District of North Carolina where they have a pending action to enforce the terms of a settlement agreement and release arising out of earlier litigation in that district involving the same parties.  They argue that the Western District of North Carolina, where the parties agree the action could have been brought, is the more appropriate forum because balancing the private and public factors favors transfer for the convenience of the parties and the witnesses.  They also rely upon a forum selection provision in the settlement agreement entered into by the plaintiff, TaiDoc Technology Corporation ("TaiDoc").

      Opposing the defendants' motion to transfer, TaiDoc invokes the first-filed rule.  It contends that because this action was filed five days before the defendants filed an action against TaiDoc in the Western District of North Carolina, transfer is precluded.  Additionally, TaiDoc argues that the defendants have failed to meet their burden under 28 U.S.C. § 1404(a) to justify transfer from the plaintiff's preferred forum.

After weighing all relevant factors and giving consideration to the plaintiff's preference and the forum selection provision, we conclude the balance tips in favor of transferring this action to the Western District of North Carolina. Therefore, the motion to transfer will be granted.

**Discussion**

A defendant moving for transfer of venue bears the burden of demonstrating that (1) the case could have been brought initially in the proposed transferee forum; (2) the proposed transfer will be more convenient for the parties and witnesses; and (3) the proposed transfer will be in the interest of justice. 28 U.S.C. § 1404(a); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Once the defendant establishes that the action could have been brought in the proposed district, the court must weigh several private and public interest factors to determine whether the balance of convenience tips in favor of transfer. *Jumara*, 55 F.3d at 879-80.

Among the factors considered when determining whether transfer is more convenient for the parties and in the interest of justice are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) the place where the claim arose; (4) the relative ease of access to the sources of proof; (5) the convenience of the parties as demonstrated by relative financial status and physical location; (6) the availability of compulsory process for the attendance of witnesses; (7) the convenience of the witnesses; (8) the practical problems that make trial of a case expensive and inefficient; and, (9) "public interest" factors, such as congestion of court dockets and the relationship of the jury

and the community. *Jumara*, 55 F.3d at 879-80. Depending on the nature and facts of the case, these factors overlap and are intertwined.

Because the analysis involved is "flexible and individualized," the district court has broad discretion in deciding a motion for transfer of venue. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Despite this wide latitude, a transfer motion is not to be granted without a careful weighing of factors favoring and disfavoring transfer. *See Shutte*, 431 F.2d at 24-25.

*Plaintiff's Choice of Forum and the Forum Selection Clause*

The plaintiff's choice of forum typically receives "paramount consideration." *Shutte*, 431 F.2d at 25; *see also Jumara*, 55 F.3d at 879 (observing that plaintiff's choice of venue "should not be lightly disturbed" (citation and quotation omitted)). However, the plaintiff's choice is given less deference when none of the operative facts underlying the claim occurred there. *See McMillan v. Weeks Marine, Inc.*, No. 02-6741, 2002 WL 32107617, at *1 (E.D. Pa. Dec. 2, 2002); *Lindley v. Caterpillar, Inc.*, 93 F. Supp. 2d 615, 617 (E.D. Pa. 2000).

TaiDoc argues that the accused devices are sold in this district. However, it does not provide any information whether the sales here are substantial or otherwise proportionately higher here than in other districts. Indeed, it acknowledges that "the claim arises in the EDPA as well as other jurisdictions." Pl.'s Br. in Opp'n 4. According to TaiDoc's theory, the case could have been brought in any district in which it filed.

Other than an undetermined number of accused devices having been sold here, TaiDoc's only connection to this district is that its attorneys have their offices here. It has

no corporate office or presence here.  Nor do the defendants.  Therefore, under these circumstances, where there are no predominant operative facts occurring in this district, TaiDoc's choice of forum need not be given paramount consideration.

There is a concern that TaiDoc is disregarding its earlier selection of the Western District of North Carolina as the appropriate forum.  When it entered into the Settlement Agreement and Release five months ago in the litigation there, it agreed that any claims for breach of the agreement were "required" to be brought in Mecklenburg, North Carolina or the Western District of North Carolina.  The forum selection clause will be given substantial consideration in the transfer analysis.

Forum selection clauses are entitled to "substantial consideration" in determining whether to transfer a case.  *Jumara,* 55 F.3d at 880.  Although the presence of a forum selection clause is afforded significant weight, it is not dispositive.  *Id.*  A forum selection clause is just one factor in balancing the convenience of the parties.  *Id.*  Nevertheless, the party seeking to avoid the forum selection clause has the burden to show why it should not be bound by their choice.  *Id.*

Forum selection clauses are either mandatory or permissive.  *Campanini v. Studsvik, Inc.*, No. 08-5910, 2009 WL 926975, at *4 (E.D. Pa. Apr. 6, 2009); *see also Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 758 n.7 (3d Cir. 1973) (distinguishing between forum selection clauses that mandate "exclusive jurisdiction" and those that "merely consent" to jurisdiction).  A mandatory forum selection clause clearly dictates that venue is proper only in the agreed upon forum.  *Campanini*, 2009 WL 926975, at *9.  A permissive one does not limit the fora, but merely authorizes venue in a particular forum.  *Id*.  Thus, the controlling factor is whether the parties intended to litigate actions in one

court to the exclusion of all others.  *SBKC Serv. Corp. v. 1111 Prospect Partners, L.P.*, 105 F.3d 578, 582 (10th Cir. 1997).

Permissive forum selection clauses are given less weight than mandatory ones because they do not exclusively limit the appropriate venue for litigation.  *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 245-46 (E.D. Pa. 2007) (citing *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987)).  The absence of a mandated forum in an agreement suggests that other factors may make another forum more convenient or appropriate.

The language of the relevant clause in this case is mandatory.  It unequivocally states that the parties to the agreement must litigate disputes arising out of an alleged breach of the agreement in North Carolina.  Accordingly, it receives significant weight.

Rather than directly challenge the validity of the applicability of the forum selection clause, TaiDoc implies that Biotech was not covered by the agreement.  It states, "This is the first time TaiDoc brought a patent infringement action against all the defendants, and the first time TaiDoc brought an action against OK Biotech in a *suitable U.S. jurisdiction*." Pl.'s Br. in Opp'n 1.  (emphasis added).  This statement suggests that the Western District of North Carolina is not a "suitable jurisdiction."  As will be seen, it is.

To avoid the applicability of the forum selection clause, TaiDoc relies on the first-to-file rule.  It argues that the defendants' action for breach of the settlement agreement filed in the Western District of North Carolina is trumped by the earlier filed infringement action in this district.  It acknowledges that "[i]n both actions, the issues of infringement and validity of the . . . patents are presented."  *Id*. at 3.

The rule is not applied "rigidly or mechanically," but is subject to the court's

discretion. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012); *EEOC v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988). Considerations of judicial and litigant economy, factors also considered in the transfer analysis, may militate in favor of not applying the rule to promote the just and effective disposition of the dispute. *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347-48 (Fed. Cir. 2005). The possibility of consolidation with related litigation, as well as the convenience and availability of witnesses, may favor transferring to another jurisdiction notwithstanding that the action was filed first. *Id.*

To apply the first-to-file rule mechanically in a case like this one would endorse a litigation tactic calculated to avoid a forum selection provision. Whether the action filed in this district is covered by the settlement agreement with its forum selection clause should be decided by the court which has jurisdiction over that agreement. Thus, we decline to invoke the first-filed rule.

### *Defendants' Preferred Forum*

The defendants prefer to litigate this case in the Western District of North Carolina where TaiDoc and two of the three defendants litigated a related case. They point out that Prodigy and DDI both have their principal places of business there and their witnesses are located there. In light of these concerns, together with the absence of any real connection to this district, this factor favors transfer.

### *Place Where the Claim Arose*

Where the claim arose implicates other factors in the analysis. It involves questions of access to proof, choice of law, convenience of the parties and the witnesses, availability

of witnesses, and efficiency concerns. Hence, determining the place where the claim occurred will inform the evaluation of these other factors.

It is true that if the accused devices were sold here, part of the claim arose in this district. It also arose in every jurisdiction where the devices were sold. The settlement agreement, however, was entered in North Carolina and emanated from the litigation there. TaiDoc and two of the defendants litigated there for several years before settling their disputes. Whether this patent infringement action is barred by that agreement should be decided by the North Carolina court. Accordingly, this factor weighs in favor of the defendants.

### *Relative Ease of Access to Sources of Proof*

There is no source of proof – witnesses or documents – in this district. On the contrary, records and witnesses relevant to the settlement agreement and the patents are in the Western District of North Carolina and maybe Taiwan. TaiDoc has not identified any witnesses or other sources of evidence in Pennsylvania. On the other hand, the defendants claim that their witnesses are located where their principal places of business are – the Western District of North Carolina. Thus, the source of proof factor clearly favors the defendants.

### *Relative Financial Status*

The Western District of North Carolina is more convenient in terms of the relative financial and physical burdens on the parties, especially for the defendants. TaiDoc and OK Biotech are Taiwanese corporations. DDI and Prodigy are headquartered in North

Carolina. At least some of the witnesses will travel from Taiwan. Whether they go to Philadelphia or Charlotte, the difference in travel time is inconsequential. Yet, other witnesses would be inconvenienced and required to travel from Charlotte rather than remaining there.

There is no evidence of the parties' relative financial status. Given the need for two of the defendants to incur travel costs in litigating the case here and the unlikelihood that the plaintiff and a third defendant will incur additional expenses, this factor weighs slightly in favor of transfer.

### *Availability of Compulsory Process*

It does not appear that the parties anticipate difficulties in compelling the attendance of witnesses. Therefore, availability of compulsory process is a neutral factor in balancing the conveniences of the parties.

Courts are only permitted to consider the convenience of the witnesses to the extent the witnesses may actually be unavailable for trial in a particular venue. *Jumara*, 55 F.3d at 879; *Brenner v. Consol. Rail Corp.*, No. 09-1574, 2009 WL 2710241, at *3 (E.D. Pa. Aug. 26, 2009). Therefore, although some witnesses will be inconvenienced if this case is litigated in Pennsylvania, the parties have not demonstrated any issues of actual availability. Thus, this factor favors neither side.

### *Practical Problems Affecting Expense and Efficiency*

The defendants contend that there are practical considerations that would make prosecution of this case in Pennsylvania expensive and inefficient. The parties are

currently engaged in litigation in North Carolina arising from the same patents and the implications of the settlement agreement.  Litigating all issues in the forum having a familiarity and connection with the issues is both fair and efficient.  It will also avoid redundancy.  In light of the past and ongoing litigation in North Carolina, efficiency considerations favor transferring this case to the Western District of North Carolina.

*Public Interest Factors*

The defendants contend that North Carolina has a public interest in adjudicating this case because many of the witnesses are located there, the judge to whom the North Carolina case has been assigned is familiar with the case, none of the conduct at issue occurred in Pennsylvania, and there is less congestion in the courts there than here. TaiDoc argues that the difference in congestion is minimal and there is no local interest in patent cases.

TaiDoc ignores the settlement agreement issue.  It fails to address North Carolina's strong interest in vindicating the contractual rights of businesses located there and in enforcing contracts entered there.  There are no claims subject to Pennsylvania law.

As to congestion, TaiDoc's reliance on statistical data is misplaced.  Since those statistics were reported, there are six vacancies in the Eastern District of Pennsylvania, accounting for almost one-third of the bench. With the lack of progress on judicial nominations, there is little likelihood that the court will reach full capacity. In the meantime, caseloads of presiding judges in the district will continue to increase, delaying dispositions. Considering North Carolina's interest and Pennsylvania's lack of interest in the issues, and the relative caseloads in both districts, the public interest factors favor transfer.

**Conclusion**

After balancing all relevant competing interests, including the plaintiff's choice of forum and the forum selection clause, the private and public interests tip in favor of transferring this case to the Western District of North Carolina. Therefore, in the interest of justice, the motion to transfer venue will be granted and this case will be transferred to the Western District of North Carolina.